**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **SUEROS Y BEBIDAS REHIDRATANTES, S.A. de C.V.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BEBIDAS ELECTROMAS, S.A. de C.V.,**<br><br>**Defendants.** | **Civil Action No.:** |

## COMPLAINT

Plaintiff Sueros y Bebidas Rehidratantes, S.A. de C.V. ("Sueros"), by and through counsel, for its Complaint against Bebidas Electromas S.A. de C.V. ("Defendant"), states as follows:

## NATURE OF ACTION

1. This is an action under 15 U.S.C. § 1071(b), asserting a de novo action post a decision by the Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United States Patent and Trademark Office ("USPTO").

2. On July 18, 2022, Defendant filed an intent-to-use application (the "Application"), pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), based on an alleged bona fide intention to use the ELECTROMAS mark in commerce as a trademark for "food supplements" in Class 5, "Fruit drinks; Mineral water; Preparations for making non-alcoholic fruit favored beverages" in Class 32 and "Alcoholic beverages containing fruit; Alcoholic beverages, except beer; Alcoholic cocktail mixes; Prepared alcoholic cocktail" in Class 33 (the "Infringing Mark"). This application was assigned serial number 97508014.

3. On July 6, 2023, Sueros filed a Notice of Opposition to Defendant's Application (the "Opposition") arguing that Defendant's ELECTROMAS mark is barred under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), based on likelihood of confusion, mistake or deception with Sueros' previously registered distinctive and famous ELECTROLIT® and ELECTROLIT ZERO® Marks (collectively, "ELECTROLIT® Marks"). Sueros also opposed Defendant's Application because Defendant's goods are likely to dilute the distinctive quality of Sueros' previously registered distinctive and famous ELECTROLIT® Marks under Section 43(c), 15 U.S.C. § 1125(c).

4. On March 10, 2026, the TTAB dismissed Sueros' Opposition, thereby permitting Defendant's ELECTROMAS mark to proceed to registration, although it currently remains pending (the "Opinion").

5. Sueros now asserts this action to remedy the TTAB's erroneous findings and decision pursuant to 15 U.S.C. § 1071(b).

## PARTIES, JURISDICTION, AND VENUE

6. Sueros is a Mexican Sociedad Anonima de Capital Variable, in Mexico, with its principal place of business at Av. España No. 1840, Col. Moderna, Guadalajara, Jalisco, 44190, Mexico.

7. Defendant is a Mexican Sociedad Anonima de Capital Variable, in Mexico, with its principal place of business at Chapalita de Occidente, Calle Ingenieros Sur #1099, Zapopan, Jalisco, 45030, Mexico.

8. This is an action for judicial review of a final decision of the TTAB under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1). The U.S. District Court for the Eastern

District of Virginia has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. §§ 1071(b) and 1121(a).

9. Venue is proper in this district pursuant to 15 U.S.C. § 1071(b)(4), which states that "if there are adverse parties … residing in a foreign country, the United States District Court for the Eastern District of Virginia shall have jurisdiction and may issue summons against the adverse parties…" Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## FACTUAL BACKGROUND

10. Plaintiff Sueros is a leading sports rehydration beverage company that sells wholesale various rehydration drinks and rehydration powders that include vital ions to help support hydration under the ELECTROLIT® and ELECTROLIT ZERO® Marks in the United States as shown below.




11. Sueros' predecessor in interest, Laboratorios Pisa, S.A. de C.V. ("Pisa"), the first pharmaceutical laboratory to develop and introduce oral rehydration solutions to the Mexican market, created and adopted the ELECTROLIT mark in the 1960s in Mexico. Given the close connection between the Mexican and United States markets, Suero's predecessor decided in 2014 to enter the United States market and sell its ELECTROLIT® rehydration products to United States consumers.

12. The renown of the ELECTROLIT mark grew to such an extent in Mexico that in 2015 an official declaration that the ELECTROLIT mark was well-known was issued by the Mexican trademark office and an updated resolution was later issued in 2022.

13. In 2022, the Mexican trademark office also issued an official declaration that the ELECTROLIT mark is famous.

14. Meanwhile, the rehydration beverage products offered under the ELECTROLIT® Marks were first sold in the United States in August 2014. Since August 2014, Sueros, or its predecessor in interest, has used, promoted, and marketed its rehydration beverage products using its famous ELECTROLIT® Marks throughout the United States.

15. Since introducing the ELECTROLIT® Marks in 2014, Sueros and/or Sueros' predecessor expanded its rehydration products by introducing the following products: diet rehydration drinks under the ELECTROLIT ZERO® mark in February 2021, and rehydration powder packages under the ELECTROLIT™ mark on Amazon in 2023 and in brick and mortar locations in March 2024.

16. Given the importance of the ELECTROLIT® Marks, Sueros and/or Sueros predecessor in interest protected its marks by obtaining various federal registrations with the PTO, including the registrations listed below for the following relevant goods:

| MARK | PTO INFORMATION | GOODS AND SERVICES |
|---|---|---|
| ELECTROLIT | Serial No. 86444778<br>Filing Date: November 4, 2014<br>Reg. No: 4833885<br>Reg. Date: Oct. 13, 2015 | Class 005: Pharmaceutical products, namely, electrolyte replacement solutions; … |

| MARK | PTO INFORMATION | GOODS AND SERVICES |
|---|---|---|
| ELECTROLIT | Serial No. 98828682<br>Filing Date: Oct. 30, 2024<br>Reg. No: 7900594<br>Reg. Date: Aug. 19, 2025 | Class 005: Electrolyte drinks for medical purposes; Electrolyte replacement solutions<br><br>Class 032: Isotonic beverages; Sports drinks; Sports drinks containing electrolytes |
| ELECTROLIT ZERO | Serial No. 90232413<br>Filing Date: Oct. 02, 2020<br>Reg. No.: 6558880<br>Reg. Date: Nov. 16, 2021 | Class 005: Dietetic beverages adapted for medical purposes; Electrolyte drinks for medical purposes; Electrolyte replacement solutions |
| ELECTROLIT ZERO | Serial No. 90232419<br>Filing Date: Oct. 02, 2020<br>Reg. No.: 6558881<br>Reg. Date: Nov. 16, 2021 | Class 032: Energy drinks; Isotonic beverages… |
| ELECTROLIT Design | Serial No. 85314269<br>Filing Date: May 06, 2011<br>Reg. No: 4222726<br>Reg. Date: Oct. 09, 2012<br>Section 8 & 15 filed and accepted<br>(Incontestable Registration) | Class 005: Electrolyte replacement solutions for oral rehydration<br><br>Class 032: Oral rehydration beverages, namely, sports drinks |
| ELECTROLIT trade dress  | Serial No. 86077067<br>Filing Date: Sep. 27, 2013<br>Reg. No: 4485695<br>Reg. Date: Apr. 07, 2015<br>Section 8 & 15 filed and accepted<br>(Incontestable Registration) | Class 005: Electrolyte replacement solutions for oral rehydration<br><br>Class 032: Oral rehydration beverages, namely, sports drinks containing electrolytes |
| ELECTROLIT Design | Serial No. 86024027<br>Filing Date: Jul. 30, 2013<br>Reg. No: 4717232<br>Reg. Date: Apr. 07, 2015<br>Section 8 & 15 filed and accepted<br>(Incontestable Registration) | Class 005: Electrolyte replacement solutions for oral rehydration<br><br>Class 032: Oral rehydration beverages, namely, sports drinks containing electrolytes |

17. The registrations of Sueros' marks constitute *prima facie* evidence of the validity and registration of the ELECTROLIT® Marks, of Sueros' ownership of the ELECTROLIT® Marks, and of Sueros' exclusive right to use the ELECTROLIT® Marks in commerce.

18. Each of the registrations listed in the chart above is valid and subsisting.

19. The ELECTROLIT® Marks have become among the most well-known brands in the U.S. for rehydration beverages and products. From the time it first decided to introduce the products in the United States, Sueros' (and its predecessor's) goal was to make the ELECTROLIT® Marks and the products offered under the ELECTROLIT® Marks as well-known and famous in the United States as they are in Mexico and other Latin American countries, which it quickly accomplished.

20. In 2022, just eight years after entering the U.S. market, the ELECTROLIT® brand became the fourth largest rehydration brand in the United States only behind Gatorade, Bodyarmor and Powerade. In fact, in some select markets, such as convenience stores in California and Texas, the products offered under the ELECTROLIT® Marks are the leaders within its segment.

21. The ELECTROLIT® Marks appear prominently in advertising and promotional materials across the United States, including but not limited to websites, social media, point of sale materials, billboards, television and radio ads, sponsorships, and tradeshows.

22. For example, Sueros has attended over 20 tradeshows across the United States promoting its ELECTROLIT® Marks, including attending the National Association of Convenience Store trade show ("NACS Show"), which is one of the largest supplier exhibitions with over 23,000 attendees from over 70 countries.

23. Sueros has also become a sponsor of various prominent events across the United States, such as the US Soccer League, Coachella, Stagecoach, the LA Marathon, and the Miami Open.

24. These events have made the products offered under Sueros' ELECTROLIT® Marks top of mind for hundreds of thousands of people.

25. For example, being a sponsor of the L.A. Marathon means that the ELECTROLIT® Marks are not only advertised to the over 20,000 runners and hundreds of thousands of spectators, but also to hundreds of thousands of other spectators who view the nationally televised event.

26. Apart from events, Sueros also makes sure that its ELECTROLIT® Marks have an enviable and extensive reputation throughout the United States by making the ELECTROLIT® brand a sponsor of famous sports stars and other influencers, such as racing driver Patricio "Pato" O'Ward, influencer and basketball star Tristan Jass, and racing driver Sergio Checo Perez.

27. Sueros also regularly promotes its ELECTROLIT® Marks through social media and other online advertising. Sueros advertises the products offered under the ELECTROLIT® Marks through frequent recurring posts on Instagram, Facebook, and TikTok.

28. Sueros' online marketing has been quite successful. Together, these social media accounts reach over half a million people.

29. In addition, the Sueros website at <electrolit.com> has been visited by over 724,000 visitors in 2022, and over 861,000 visitors in 2023.

30. In addition, for specialized marketing campaigns, Sueros has employed other media such as Meta, YouTube, Spotify, NBC, Infinia, and Google Ads. One such campaign – an April-June 2023 Summer Digital Advertising campaign – delivered over 105 million impressions on YouTube, over 64 million on Meta, over 43 million on Infinia, and over 12 million on NBC.

31. Apart from its website and social media, over the past decade Sueros has employed traditional advertising campaigns to increase the national awareness of the ELECTROLIT® Marks such as advertising on billboards, digital bulletins, wallscape ads, bus and transit mobile cars wrap, bus stop ads, radio commercials on channels such as iHeart radio, advertisements on digital music services such as Spotify, television commercials, and print media ads. These billboard and other physical advertisements have run in cities across the U.S., including Los Angeles, CA, Miami, FL, Atlanta, GA, Chicago, IL, Cincinnati, OH, Dallas, TX, Ft. Smith and Bentonville, Arkansas, Houston, TX, Las Vegas, NV, New York, NY, Phoenix, AZ, and Lakeland, FL.

32. The public association of the ELECTROLIT® Marks with Sueros is further cemented by the fact that the products offered under the ELECTROLIT® Marks are sold across the United States through numerous different distribution channels and retail outlets to the general public.

33. The Sueros products offered using the ELECTROLIT® Marks are available for sale at various national, regional and local retail outlets across all 50 states. The distribution and retail channels for the products sold under the ELECTROLIT® Marks can be described as follows:

a. the grocery channel, which includes traditional grocery stores and supermarket stores like Kroger, Publix, Food 4 Less, Vallarta and Albertsons/Safeway;

b. the mass channel, which includes Walmart and Target;

c. the convenience channel, which includes 7-Eleven, Circle K, Pilot, QuickTrip and other convenience stores;

d. the discount channel, which includes Aldi and Dollar General;

e. the drug store channel, which includes stores like CVS, Walgreens, and Rite-Aid;

f. the liquor channel, which includes Oaken Keg Spirit Shop and Spec's Wine, Spirits and Finer Goods and other liquor stores;

g. the military channel, such as various Army, Marine, and Navy bases; and

h. the e-commerce channel, which includes Sueros' website and Amazon storefront.

34. An estimated 120,000 individual U.S. retail outlets sell products using the ELECTROLIT® Marks.

35. Moreover, with the new distribution agreement with Keurig Dr. Pepper, the rehydration products sold under the ELECTROLIT® Marks have entered a wider distribution network in stores and multiple channels, further growing the brand's presence and further accelerating sales across a wider swatch of consumers.

36. The widespread sale of the products using the ELECTROLIT® Marks has resulted in a significant volume of sales.

37. Sueros' sales of products offered under the ELECTROLIT® Marks have exponentially increased since the brand was introduced in the United States in 2014. From 2014 to 2015, gross sales increased sixfold. In 2016, sales doubled from the prior year and in 2017 sales tripled. In 2018, sales figures once again dramatically increased threefold over the prior year. By 2023, sales were over 1,400 times those of its first year in 2014.

38. These strong sales figures translate to very large unit sales given that the products are low-cost.

39. In fact, Sueros' sales of products offered under the ELECTROLIT® Marks have been so successful that Sueros invested $400 million in a new facility in Waco, Texas.

40. The ELECTROLIT® Marks and the products offered under the marks have also developed an enviable nationwide reputation due in part to and is evidenced by the unsolicited

media attention the ELECTROLIT® Marks have received in various media outlets due to the extraordinary growth of the brand.

41. For example, on July 5, 2016, Abasto published an article that focused on the accelerated growth of the ELECTROLIT® since entering the US market.

42. A more recent article by Abasto, published on August 31, 2022, discussed the ELECTROLIT® brand's ability to achieve a distribution of over 10,000 stores, reaching over 70,000 points of sale in the United States.

43. An article in Sports Medicine, published on August 10, 2020, also discussed the significant growth of the ELECTROLIT® brand in the sports drink market—at the time, being the fourth largest brand in the category behind Gatorade, Powerade and Bodyarmor.

44. Similarly, on August 22, 2022, Bevnet published an article about the ELECTROLIT® brand that focused on its swift rise in the hydration market to the third largest brand in the United States.

45. The growth of the ELECTROLIT® brand has received so much media attention that Aligned Growth Management even published a case study on the ELECTROLIT® brand and how Sueros used influencers to launch into the U.S. market.

46. The strength of the ELECTROLIT® Marks is evident. It is therefore no wonder that the ELECTROLIT® Marks are now readily and exclusively associated with a single source – Sueros – in the mind of consumers.

47. Further, given the importance of the ELECTROLIT® Marks, Sueros has protected its marks by federally registering them and, in line with good trademark practices, by diligently policing third-party uses of similar marks.

48. As a trademark owner, Sueros diligently polices its ELECTROLIT® Marks and, when necessary, sends appropriate cease and desist letters to companies using and/or seeking PTO registrations of similar trademarks for products likely to cause confusion with Sueros products using the ELECTROLIT® Marks.

49. When necessary to protect its trademark rights, Sueros has initiated legal action against unauthorized third party uses or PTO registrations, including via TTAB proceedings.

50. As a result of Sueros' consistent enforcement of its rights, the trademark register is free of ELECTRO formative marks that use a short second term with a similar connotation to "lit" – like "Mas" as shown in the ELECTROMAS mark – used in connection with drinks in Class 32.

**PROCEDURAL BACKGROUND**

51. On July 18, 2022, Defendant filed its Application, pursuant to Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), based on an alleged bona fide intention to use the ELECTROMAS mark in commerce as a trademark for "food supplements" in Class 5, "Fruit drinks; Mineral water; Preparations for making non-alcoholic fruit favored beverages" in Class 32 and "Alcoholic beverages containing fruit; Alcoholic beverages, except beer; Alcoholic cocktail mixes; Prepared alcoholic cocktail" in Class 33.

52. On July 6, 2023, Sueros filed its Opposition to Defendant's Application. In its Opposition, Sueros established that: (1) Sueros has priority of rights over any right to the ELECTROMAS mark; (2) the introduction of the ELECTROMAS mark is likely to cause consumer confusion with the ELECTROLIT® Marks; and (3) registration of the ELECTROMAS mark is likely to dilute the famous ELECTROLIT® Marks by blurring.

53. On March 10, 2026, the TTAB dismissed Sueros' Opposition on the basis that the dissimilarity of the marks, coupled with the conceptual weakness and moderate commercial

strength, favored a conclusion that no likelihood of confusion would occur. The TTAB's decision was clearly erroneous for several reasons.

54. Despite finding Sueros' and Defendant's goods overlap and utilize similar trade channels, the TTAB's conclusion relied upon a hyper technical review of the evidence to erroneously conclude Sueros' ELECTROLIT® Marks were not conceptually or commercially strong, and that Defendant's ELECTROMAS mark was sufficiently dissimilar, notwithstanding decades of acquired substantial distinctiveness and market recognition.

55. The TTAB's decision on Sueros' dilution claim was similarly based on a flawed commercial strength and fame analysis to conclude that Defendant's ELECTROMAS mark would not dilute the ELECTROLIT® Marks.

56. Indeed, there is a significant likelihood consumers will be confused when they encounter the ELECTROLIT® Marks and ELECTROMAS mark in the marketplace given the similarities in the marks, the goods and services to which the marks are applied, and the channels of trade, as well as the fame of Sueros' ELECTROLIT® Marks built up over decades of use.

57. Moreover, both Sueros and Defendant are Mexican companies, which may further create a similar association in the minds of consumers and cause further confusion.

58. Defendant's ELECTROMAS mark is designed to draw a close association to Sueros' famous mark and cause improper brand association thereby allowing Defendant to freely ride on the coat tails of Sueros' fame and goodwill in the ELECTROLIT® Marks.

59. It is these fundamentally erroneous findings by the TTAB for which Sueros seeks redress from this Court.

## STANDARD OF REVIEW

60. This civil action is brought under 15 U.S.C. § 1071(b), which allows parties to bring a civil action in district court in lieu of an appeal to the TTAB. Section 1071(b) also requires that a trial court employ a "unique" standard of review, while sitting in what amounts to a dual capacity. *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 745 (E.D. Va. 2012), *aff'd sub nom. Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014) (citing 3 McCarthy on Trademarks and Unfair Competition § 21:21 (5th ed.)); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001) ("[T]he district court sits in a dual capacity. It is an appellate reviewer of facts found by the TTAB and is also a fact-finder based on new evidence introduced to the court."); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996) ("Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh.")

## CAUSES OF ACTION

### COUNT I
### (Request for Reversal of the TTAB Decision Under Section 21(b) of the Lanham Act 15 U.S.C. § 1071(b))

61. Sueros reasserts each preceding allegation as if set forth fully herein.

62. Sueros disagrees with the decision of the TTAB and its erroneous conclusions that Defendant's ELECTROMAS mark is not likely to cause confusion with Sueros' ELECTROLIT® Marks and the Defendant's ELECTROMAS mark does not dilute the ELECTROLIT® Marks.

63. The TTAB decision should be reversed and vacated, and an order should be entered directing the USPTO to reverse its decision on Sueros' Opposition, thereby denying Defendant's Application for intent-to-use ELECTROMAS.

## PRAYER FOR RELIEF

**WHEREFORE**, Sueros respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. That the Court reverse the March 10, 2026 TTAB decision in the matter of Sueros y Bebidas Rehidratantes, S.A. de C.V. v. Bebidas Electromas S.A. de C.V., Opposition No. 97508014 referenced herein, pursuant to 15 U.S.C. § 1071(b).

B. That the Court sustain Sueros' opposition to Application Serial No. 97508014 and order the USPTO to refuse registration of ELECTROMAS.

C. That the Court grant such other relief as it deems appropriate.

DATED: May 11, 2026

Respectfully Submitted,

**DICKINSON WRIGHT PLLC**

*/s/ H. Jonathan Redway*
H. Jonathan Redway (VA Bar No. 42189)
Nicole M. Meyer (VA Bar No. 43029)
Email: JRedway@dickinson-wright.com
Email: nmeyer@dickinson-wright.com
1825 St. NW
Washington, DC 20006
Tel: (202) 457-0160
Fax: (844) 670-6009

John L. Krieger (*pro hac vice* to be submitted)
Email: jkrieger@dickinson-wright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Tel: (702) 550-4400

Cindy A. Villanueva (*pro hac vice* to be submitted)
Email: cvillanueva@dickinson-wright.com
1850 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 285-5000

*Attorneys for Plaintiff*
*Sueros y Bebidas Rehidratantes, S.A. de C.V.*